IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ZHUMABEK KUDYRKULOV, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 6:26-cv-3035-MDH |
| | ) |
| CASS MARTIN, *et. al.*, | ) |
| | ) |
| Respondents. | ) |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and parole has been terminated without prior written notice. Pending is his Verified Petition for Writ of Habeas Corpus in which he argues federal statutes and the Due Process Clause require that he be released or granted a hearing. The Court agrees with Petitioner's statutory arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

## BACKGROUND

Petitioner is a 40-year-old man who is a native of Kyrgyzstan and citizen of Russia. Petitioner entered the United States without inspection on or about December 7, 2021, and has remained in the United States ever since. Petitioner lives with his wife and two children in Mount Prospect, Illinois.

In December 2021, after fleeing from his country, Petitioner was granted parole pursuant to 8 U.S.C. § 1182(d)(5)(A), which provides for parole into the United States "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Later on, Petitioner filed an Application for Asylum and Withholding of Removal with the Immigration Court.

1

Petitioner has no arrests or convictions in the United States. Petitioner works as an Uber driver and is the primary financial supporter of his family. On October 18, 2025, ICE took him into custody by ICE/ERO officials. Petitioner was detained by ICE/ERO while working as an Uber driver near O'Hare International Airport.

At the time of his detention, Petitioner had a pending I-589 Application for Asylum with USCIS. He had valid work authorization and a social security number. Respondents did not provide any notice or explanation about Petitioner's parole revocation and the circumstances at play do not indicate that the humanitarian reason or public benefit that provided justification for Petitioner to be paroled into the country no longer exists or applies.

Petitioner brought this proceeding, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, against (1) the acting field office director for ICE Kansas City, (2) the Secretary of DHS, and (3) the Ozark County Sheriff, all in their official capacities.[1] He asserts his detention violates the Immigration Nationality Act (INA), and the Due Process Clause. Respondents argue that Petitioner is not entitled to be considered for release, and the Court resolves the parties' arguments below.

## DISCUSSION

### I. Jurisdiction

Respondents argue that three statutory provisions—8 U.S.C. §§ 1252(e)(3), 1252(g) and (b)(9) deprive this Court of jurisdiction to consider Petitioner's claims. The Court disagrees.

---

[1] Petitioner's Petition lists Sheriff Martin as a party by virtue of his administration of the Ozark County Jail where Petitioner is currently detained. While Sheriff Martin was not served in this case as of the date of this Order, the Court construes the proper party holding Petitioner in custody as the Department of Homeland Security through Immigration and Customs Enforcement. As DHS and ICE are utilizing the Ozark County Jail to hold Petitioner and other detainees, the Court expects its ruling to apply to the Government and those aiding the Government regarding this specific case.

Section 1252(e)(3), entitled "Challenges on validity of the system," limits the scope of judicial review of "orders under Section 1225(b)(1)" and limits venue to the U.S. District Court for the District of Columbia. Petitioner is "not challenging the lawfulness of any particular statute, regulation, or written policy or procedure." Thus, § 1252(e)(3) does not strip this Court of jurisdiction. *See Munoz Materano v. Arteta*, 2025 WL 2630826 (S.D.N.Y. Sept. 12, 2025), at *10. Further, this statute only bars jurisdiction based on those held under 8 U.S.C. § 1225. However, the Court adopts its ruling in similar cases[2] and finds that Petitioner is being held under 8 U.S.C. § 1226.[3] Therefore, 8 U.S.C. § 1252(e)(3) does not deprive the Court of Jurisdiction.

Sections 1252(g) and (b)(9) apply narrowly to systemic challenges to regulations implementing expedited removal, review of an order of removal, the decision to seek removal, or the process by which removability will be determined, not to constitutional or statutory claims which precede and are collateral to that process, including, as relevant here, unlawful arrest or detention. *See Mata Velasquez v. Kurzdorfer*, No. 25-CV-493-LJV, 2025 U.S. Dist. LEXIS 135986, 2025 WL 1953796, at *7 (W.D.N.Y. July 16, 2025); see also *Hernandez-Cuevas v. Olson*, No. 4:25-cv-00830-BP, at 3 (W.D. Mo. Nov. 05, 2025) (citing 8 U.S.C. § 1252(b)(2)); *Cifuentes Rivera v. Arnott, et al*, 25-cv-00570-RK1, Doc.19 at 7 (W.D. Mo. Oct. 07, 2025) ("the narrow scope of § 1252(g) does not cover "claims [that] are collateral to the Government's decision to execute the final order of removal," for instance, claims seeking relief based upon the Government's alleged failure to comply with its own regulations regarding the required administrative processes after an

---

[2] *Andres v. Noem*, et al., No. 25-03321-CV-S-MDH, *Eshdavlatov v. Olson*, et al. No. 25-00844-CV-S-MDH, *Hernandez-Cuevas v. Olson*, et al., No. 25-00830-CV-W-BP, *Ifante v. Noem*, et al., No. 25-03322-CV-S-MDH, *Morales-Rodriguez v. Arnott*, et al., No. 25-00836-CV-S-MDH, *Pozos-Ramirez v. Noem*, et al., No. 25-03316-CV-S-MDH.
[3] The Court rejects Respondents' argument that an arriving alien, who was granted parole upon arrival, can still be an arriving alien 5 years later. Petitioner is a person who entered and was paroled into the interior.

3

alien is detained."). Petitioner is challenging his unlawful detention, not any removal decisions or actions, so the above provisions do not deprive the Court of jurisdiction.

For those reasons, this Court concludes it has jurisdiction over Petitioner's habeas petition.

II. **The Due Process Clause**

"A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Sanchez v. LaRose*, 2025 U.S. Dist. LEXIS 190593, *6-7 (citing *Miranda v. City of Casa Grande*, 15 F4th 1219, 1225 (9th Cir. 2021) (internal quotations and citation omitted)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Sanchez v. LaRose* at *7 (citing *Zadvydas v. Davis*, 533 U.S. at 690). Although immigration detention is administrative, it is still subject to due process clause review. *Id.* (citing *Hernandez v. Sessions*, 872 F3d at 981 ("the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process.")). When the government grants an alien parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment. *Id*. (citing *Alegria Palma v. LaRose*, 25-cv-1942, ECF No.14 (S.D. Cal. Aug. 11, 2025) (finding that "continued freedom after release on own recognizance" was a core liberty interest)). Here, Petitioner was deprived of his liberty interest in his prior parole status when Respondents revoked that parole and placed him in detention.

Respondents also denied petitioner due process in the revocation of his parole. "The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it." *Sanchez* at *8 (citing *Mathews v.*

*Eldridge*, 424 U.S. 319, 348, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72, 71 S. Ct. 624, 95 L. Ed. 817 (Frankfurter, J., concurring)). In the immigration context, "the Constitution requires the government to afford notice of any action against an alien [and] requires an opportunity for the alien to be heard. [] The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner." *Id*. (citing *Ying Fong v. Ashcroft*, 317 F.Supp.2d 398, 403 (S.D.N.Y. 2004) (internal quotations and citations omitted)).

An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's parole "at any time" on a discretionary, but not unlimited, basis. *Id*. at *8. (citing 8 U.S.C. § 1226(b); *Mohammed H. v. Trump*, No. 25-1576 (JWB/DTS), 2025 U.S. Dist. LEXIS 117197, 2025 WL 1692739, at *5 (D. Minn. June 17, 2025) ("The Government has wide—but not unlimited—discretion in the immigration realm.")). The Board of Immigration Appeals ("BIA") has held that DHS may change the conditions of an alien's parole only when there is a sufficient change of circumstances to justify that change. *Id*. (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981) (as cited in *Alegria Palma*, No. 25-cv-1942-BJC-MMP, ECF No.14 at 3)). "In practice, the DHS re-arrests individuals only after a 'material' change in circumstances." *Id*. at *9. (citing *Ortega v. Bonnar*, 415 F.Supp.3d 963, 968 (N.D. Cal. 2019)). To satisfy due process, those changed circumstances must represent individualized legal justification for detention. *Id*. at *9 (citing *Mohammed H.*, 2025 U.S. Dist. LEXIS 117197, 2025 WL 1692739 at *5 (granting a writ of habeas corpus on due process grounds due to a lack of individualized legal justification for changing the petitioner's status)).

5

Here, Respondents revoked Petitioner's parole without a showing of change in circumstances related to his case. Respondents do not dispute the facts as Petitioner presents them. They only argue that Petitioner is an "arriving alien." In their briefing, Respondents do not state a "sufficient change in circumstances" to justify revoking Petitioner's parole, or any individualized justification at all. *Id*. at *9 (citing *Matter of Sugay*, 17 I. & N. Dec. at 640). Petitioner's parole into the U.S. was based on his asylum claim, the underlying facts of which have not changed, and he was in possession of a still-valid work authorization, a social security number, and awaiting further immigration proceedings. There was no evidence from his conduct that he was a flight risk. He was simply performing his duties as an Uber driver in Chicago waiting to pick up passengers at the airport. Thus, Respondents did not satisfy the requirement of due process in revoking Petitioner's parole.

### III. Temporary Restraining Order

In the Petition, Petitioner seeks an order permanently enjoining his re-detention absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks. Petitioner also requests this Court grant any further relief this Court deems just and proper.

The Court below orders release and will not issue a TRO or permanent injunction specifically for those matters. However, under similar circumstances, this Court has granted temporary injunctive relief to habeas petitioners to enjoin Respondents from relocating petitioners outside the jurisdiction of this Court prior to compliance with this Order. The Courts finds that such relief is just and proper in this case.

In analyzing a request for a TRO, the Court weighs: 1) probability movant will succeed on the merits; 2) threat of irreparable harm to the movant absent injunction; 3) balance between threatened harm to the movant and harm the injunction would inflict on other interested parties; and 4) the public interest. *Dataphase Sys., Inc. v. C L Syst., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). "No single factor is dispositive;" rather, the court must consider all factors to determine whether on balance they weigh towards granting the remedy. *Calvin Klein Cosmetics Corp. v. Lenox Labs.*, Inc., 815 F.2d 500, 503 (8th Cir. 1987).

The Court finds that a TRO in this case is appropriate. As discussed above, the Court has already found that movant will succeed on his Petition for Habeas Corpus by virtue of his Due Process argument. Further, the threat of irreparable harm to the movant absent injunction is high as any move from this district prior to a bond hearing would render this Order and Petitioner right to a hearing as meaningless. As to the balance between the threatened harm to the movant and the harm the injunction would inflict on other interested parties, the balance tips in favor of Petitioner. Respondents and other interested parties would not suffer by allowing Petitioner to have a hearing. Lastly, there is a public interest in allowing those who are detained in violation of the Due Process Clause to be released and given hearing as expressed and determined by Congress. For these reasons, the Court finds a TRO is appropriate.

## IV. **Attorneys' Fees**

Petitioner requests an award of reasonable attorneys' fees and costs. Pursuant to the EAJA, a court shall award to a prevailing party fees and other expenses incurred by that party in any civil action, brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application

within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). The EAJA was enacted with the purpose of removing the financial disincentive for individuals challenging or defending against government action and encouraging challenges to improper government action as a means of helping formulate better public policy. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." (citation omitted)); *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) ("The EAJA was passed partly to *encourage* challenges to improper actions by government agencies. The drafters perceived legal actions as helping to formulate public policy." (citations omitted)).

As explained throughout, the Court finds the position of the United States is not substantially justified. Respondents revoked Petitioner's parole without a showing of change in circumstances related to his case. Respondents do not dispute the facts of Petitioner's status, arrest, or detainment. Yet, Respondents revoked Petitioner's parole without prior written notice. Thus, Petitioner may pursue an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act.

## **CONCLUSION**

The Court concludes Respondents revoked Petitioner's parole without a showing of change in circumstances, his right to procedural due process has been violated, and he is entitled to immediate release. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** as follows.

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole.

2. Petitioner must be immediately released from detention and returned to a reasonable proximity of the geographical location of his residence.

3. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondent.

4. Petitioner may submit an application for fees under the EAJA within thirty days of the entry of final judgment.

5. It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order.

**IT IS SO ORDERED**.

DATED: February 5, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**